**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>BRIAN ALEXIS PATRON LOPEZ (4),<br>Defendant. | Case No.: 3:21-CR-1683-WQH<br><br>**ORDER** |

The matters before the Court are the Motion to Dismiss the Second Superseding Indictment (ECF No. 216) and the Motion to Suppress Statements (ECF No. 215), filed by Defendant Brian Alexis Patron Lopez ("Patron").

## I. Motion to Dismiss

### A. Background

On June 3, 2021, the Government filed a three-count Indictment charging Defendants Wyatt Valencia-Pacheco and Jonathan Emmanuel Montellano-Mora with intentional killing while engaged in drug trafficking in violation of 21 U.S.C. § 848(e)(1)(A), hostage taking resulting in death in violation of 18 U.S.C. § 1203, and conspiracy to take hostages resulting in death in violation of 18 U.S.C. § 1203. (ECF No. 1.)[1] The Indictment alleged that, between May 28, 2020 and May 31, 2020, the Defendants, along with a juvenile A.L.L., who was charged separately, kidnapped and

[1] Unless otherwise noted, all citations to an "ECF No." refers to filings in the above-captioned case.

murdered M.A.R., a United States citizen, at a location outside the United States while engaged in a drug trafficking conspiracy.

On June 22, 2021, the Government filed a sealed Complaint for Material Witness against Guillermo Adrian Valencia-Pacheco ("Adrian Valencia-Pacheco" or "Adrian"), who is the brother of Defendant Wyatt Valencia-Pacheco. (*See* S.D. Cal. Case No. 21-mj-2539-AHG, ECF No. 1.) The Complaint for Material Witness alleged that Adrian Valencia-Pacheco "is a citizen of a country other than the United States; said alien is deportable; his testimony is material; it is impracticable to secure his attendance at the trial by subpoena; [and] he is a material witnesses in relation to criminal cases pending in the Southern District of California," including the above-styled case. *Id*. at 1–2. The Affidavit in Support of the Complaint for Material Witness asserted:

> During a post-*Miranda* interview, A.L.L. admitted that Material Witness Guillermo Adrian Valencia-Pacheco ('Adrian') was present for the hostage taking and witnessed events on May 30, 2021. As discussed herein, social media communications between W. Valencia and A.L.L. corroborate that Adrian was present for the hostage taking. Adrian is a percipient witness to the hostage taking and perhaps other events that occurred from May 28, 2020 through and including May 30, 2020.

*Id*. at 4.

On June 29, 2021, agents of the Federal Bureau of Investigation interviewed Adrian Valencia-Pacheco. (*See* Part 1 of Trans., Ex. 1 to Government Resp. to Mot. To Dismiss, ECF No. 220.) Adrian first stated: he did not know the victim, M.A.R., and had "never" seen him, *id*. at 42, 56; Adrian did not know that his brother trafficked drugs, *id*. at 50, 54–55; and Adrian did not know the Motel El Parador, where M.A.R. was kidnapped, or the Motel Luxor, where M.A.R. was held. *Id*. at 57–58. Later in the interview, Adrian stated that he was at the Motel Luxor, but in a different private room with a girl. *Id*. at 75. Adrian claimed to know "Brian Patron" and that "they all live around my block." *Id*. at 84. After agents showed him a photo of Patron, Adrian stated that he did not recognize him and he "had never seen him," "[b]ut I do know the name."

*Id*. at 85. The agents then showed Adrian another photo and Adrian said that he recognized Patron in that photo. *Id*. at 85. The following colloquy then occurred:

> AGENT: You do know him as Brian, right? … You just told us you do, right?
> ADRIAN: Yes, yes, yes, yes.
> AGENT: Okay, perfect. … So, [A.L.L.], Brian Patron were at the Luxor… Do you know [name of a non-party]?
> ADRIAN: No.
> AGENT: No? And the fourth person was -was you.
> ADRIAN: It was me.
> AGENT: Yes.
> ….
> ADRIAN: No. I was doing my own thing.

*Id*. at 85–86. Adrian again stated he was with a girl at the Motel Luxor in a different room, and continued to disavow knowledge of the kidnapping, stating that it was "by chance" that he was in the same hotel. (Part 2 of Trans. at 3–5, 15, 23, Ex. 2 to Government Resp. to Mot. To Dismiss, ECF No. 220.) Later, Adrian stated that he "helped" M.A.R. "so that [M.A.R.] wouldn't bleed out" and he "gave [M.A.R.] food." *Id*. at 34. Adrian stated that he did not know who "beat up" M.A.R. *Id*. at 37. Adrian stated that he was present for "[a]bout five" hours. *Id*. at 40. Then the following colloquy occurred:

> AGENT: So, [A.L.L.] was there, right?
> ADRIAN: Mm-hmm.
> AGENT: And who else was there?
> ADRIAN: Then, more people no—I don't know who was there.
> AGENT: So, when [A.L.L.] got out of the car, we know that [A.L.L.] by himself could not handle [M.A.R.]. So, who was driving the car?
> ADRIAN: I don't know the other people…. And I don't know if exactly there were any more people…. I don't know with cer… with certainty… to say, "Oh, yes, there was another one. There was another one. There was another … stranger. There was another stranger."

*Id*. at 47–48. When asked who brought Adrian to the Motel Luxor, Adrian stated, "I don't remember well. They had their faces covered…. They had masks." *Id*. at 51.

Adrian then stated that "[j]ust one person" was in the car that drove him to the motel, and that person was wearing a mask. *Id*. at 53. Adrian then stated that he "was drunk" at the time, and he did not remember how he got to the motel. *Id*. at 58. Adrian stated that "I don't know who kidnapped [M.A.R.]. I don't know what hotel they kidnapped him from." *Id*. at 65. Adrian then stated that he went to the Motel Luxor at A.L.L.'s request to "help [M.A.R.] so that he didn't bleed out." *Id*. at 72. Adrian stated that he did not know that M.A.R. was later killed. *Id*. at 74.

On September 10, 2021, Adrian Valencia-Pacheco made his initial appearance in the Southern District of California before Magistrate Judge Allison H. Goddard. (*See* S.D. Cal. Case No. 21-mj-2539-AHG, ECF No. 9.) At this hearing. Judge Goddard appointed counsel to represent Adrian Valencia-Pacheco.

On January 24, 2022, Judge Goddard ordered the release of Adrian Valencia-Pacheco following the execution of a stipulation, which was filed in the above-captioned case. (*See* S.D. Cal. Case No. 21-mj-2539-AHG, ECF No. 21.) The stipulation stated that "[t]he material witness' involvement in this criminal matter is such that, if the parties were to seek to depose the material witness, the material witness would assert his 5th Amendment right to decline to answer any questions." (ECF No. 36 at 2.) Pursuant to the Stipulation, Adrian Valencia-Pacheco was released to the custody of "the Department of Homeland Security for return to his country of origin." *Id*. at 3.

On April 28, 2022, the Government filed a Superseding Indictment, adding Luis Armando Dorantes Rivera, Jr. as a Defendant. (ECF No. 45.)

On September 29, 2022, the Government filed a Second Superseding Indictment, adding Patron as a Defendant for the first time. (ECF No. 94.)

On June 14, 2024, Patron was arrested. (ECF No. 193.)

On October 28, 2024, Patron filed the pending Motion to Dismiss the Second Superseding Indictment. (ECF No. 216.) Patron contends:

> Despite Mr. Adrian's Valencia's status as a material witness, on January 24, 2024 [sic], the United States stipulated to release Material Witness Adrian Valencia so that he could be deported back to Mexico, where he remains beyond the reach of defense counsel. The government's actions here amount to the precise practice the Ninth Circuit so vociferously decried in *United States v. Leal-Del Carmen*, 697 F.3d 964 (9th Cir. 2012). Because the government's intentional release and deportation of a material eyewitness has effectively prohibited Mr. Patron from receiving a fair trial and hampered his ability to present a complete defense, this Court should dismiss the indictment.

(ECF No. 216-1 at 2–3.) Patron asserts that "FBI agents interviewed Material Witness Adrian Valencia after his arrest on the material witness complaint," and he "did not implicate Mr. Patron in any of the charged conduct, even though he was present during many of the events in which the government now claims Mr. Patron actively participated." *Id*. at 2. Patron contends that, "[a]s a result of the United States' successful attempts to speedily whisk Material Witness Adrian Valencia away to Mexico, the jury will not be exposed to the testimony of a percipient witness who has never placed Mr. Patron at any of the charged events." *Id*. at 5. Patron also contends that "[b]y deporting material witness Adrian Pacheco prior to Mr. Patron ever having an opportunity to question him and without even interviewing him himself, the government has, in effect, barred Mr. Patron from this exculpatory evidence," in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). (ECF No. 216-1 at 7.)

On November 11, 2024, the Government filed a Response in opposition to the Motion to Dismiss. (ECF No. 218.) The Government contends:

> Defendant's motion … omits two important facts. First, [Adrian Valencia-Pacheco] was deported approximately eight months before Defendant was indicted and approximately 2.5 years before Defendant made his initial appearance. Second, [Adrian Valencia-Pacheco] invoked his rights under the 5th Amendment and refused to be deposed. These facts render Defendant's motion meritless, and it should be denied.

*Id*. at 1.

On November 18, 2024, the Court conducted oral argument on the Motion to Dismiss.

**B. Analysis**

"Whether grounded in the Sixth Amendment's guarantee of compulsory process or in the more general Fifth Amendment guarantee of due process, the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." *United States v. Leal-Del Carmen*, 697 F.3d 964, 969 (9th Cir. 2012) (quotation omitted). The Court of Appeals for the Ninth Circuit has "adopted a two-part test to evaluate whether the government's deportation of an alien-witness amounts to a constitutional violation." *Id.* "First, the defendant must show that the government acted in bad faith." *Id*. at 969–70 (citing *United States v. Dring*, 930 F.2d 687, 693 (9th Cir. 1991)). "Second, the defendant must demonstrate that deportation of the witness prejudiced his case." *Id*. at 970 (citing *Dring*, 930 F.2d at 693).

In *Leal-Del Carmen*, the defendant was arrested on the same day in the same area as a group of twelve illegal aliens hiding in the thick brush near the United States–Mexico border. That night, border patrol agents interviewed four of the aliens about the defendant. One of the aliens identified defendant in a photospread and when asked three separate times if defendant gave orders to the rest of the group, the alien answered that he did not. Three other aliens identified defendant as a leader or as someone with whom they made travel arrangements. The government kept these three alien as material witnesses, but deported the alien who said the defendant did not give orders. The Ninth Circuit held that the deportation violated defendant's constitutional rights. *See id*. at 970–72. The court stated that, "[o]nce the government is aware that an alien has potentially exculpatory evidence, it must treat that person as a material witness and give defense counsel the opportunity to interview him and make a reasoned determination whether to seek his retention pending trial." *Id*. at 970. The court continued: "If the government wants to deport the witness notwithstanding defense counsel's wishes, it must obtain permission from the district court on a showing of good cause, which

defense counsel must have the opportunity to oppose; it must also afford defense counsel the opportunity to cross-examine the witness and preserve the testimony for trial." *Id*. The court stated that "[t]hese requirements will not interfere with the execution of the nation's immigration laws," and "[a]t most, the government will be required to keep a small number of aliens a few extra days or weeks." *Id*.

This case is materially different than *Leal-Del Carmen*. First, Patron has failed to show that the Government acted in bad faith. Unlike in *Leal-Del Carmen*, there is no showing that the Government deported Adrian Valencia-Pacheco "to give itself an unfair advantage" in its prosecution of Patron. *Leal-Del Carmen*, 697 F.3d at 971. The deportation occurred eight months prior to charges being filed against Patron. Patron has made no showing that the Government had sufficient evidence to charge Patron at the time of the deportation, but waited to charge Patron so as to prevent him from opposing the deportation. To the contrary, as Patron states in the Motion to Dismiss, the basis of the Government's case against Patron is "self-serving" testimony (ECF No. 216-1 at 5), rather than the "irrefutable social media communications, cell-phone data, videos, and witness statements" that formed the basis of the arrests of Patron's co-Defendants, *id*. at 4. Based upon the timing of the relevant plea agreements, it appears that the Government only became aware of this "self-serving" testimony implicating Patron months *after* the deportation of Adrian Valencia-Pacheco. As in *Dring*, Patron "has presented no evidence that the Government departed from normal deportation procedures" and "has made no showing that the Government deported the alien[] to gain an unfair tactical advantage over him at trial." *Dring*, 930 F.2d at 695; *see also United States v. Gastelum-Almeida*, 298 F.3d 1167, 1174 (9th Cir. 2002) ("To establish that the government acted in bad faith, Gastelum–Almeida must show either that the government departed from normal deportation procedures, or that it deported the witnesses to gain an unfair tactical advantage at trial.") (quotation omitted).

Also, unlike in *Leal-Del Carmen*, the Government "obtain[ed] permission" for the deportation from Judge Goddard "on a showing of good cause"—namely the

stipulation that "[t]he material witness' involvement in this criminal matter is such that, if the parties were to seek to depose the material witness, the material witness would assert his 5th Amendment right to decline to answer any questions." (ECF No. 36 at 2.) Patron has failed to show that the Government obtained or relied on this stipulation in anything other than good faith. As stated in *Leal-Del Carmen*, "[t]here is no violation where the executive has made a 'good-faith determination' that the alien-witness possesses no evidence that might exculpate the defendant." 697 F.3d at 970 (quoting *United States v. Valenzuela–Bernal*, 458 U.S. 858, 872–73 (1982)). The Court finds that Patron has failed to show that the Government acted in bad faith in deporting Adrian Valencia-Pacheco. For this reason alone, the Motion to Dismiss must be denied. *See Dring*, 930 F.2d at 695 ("[U]nless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." (quoting *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988)).

Even if Patron had shown bad faith, Patron fails to establish the second required showing—prejudice. "To prevail under the prejudice prong, the defendant must at least make 'a plausible showing that the testimony of the deported witnesses would have been material and favorable to his defense, in ways not merely cumulative to the testimony of available witnesses.'" *Dring*, 930 F.2d at 693–94 (quoting *Valenzuela–Bernal*, 458 U.S. at 873). Given the stipulation that Adrian Valencia-Pacheco "would assert his 5th Amendment right to decline to answer any questions" (ECF No. 36 at 2), Patron cannot establish that Adrian Valencia-Pacheco would have been available to testify, much less that his testimony would be material and favorable to his defense. *Cf. United States v. Brutzman*, 731 F.2d 1449, 1454 (9th Cir. 1984) ("Where a witness' unavailability results from an invocation of the privilege against self-incrimination, the witness is unavailable to both parties…."), *overruled on other grounds by United States v. Charmley*, 764 F.2d 675, 677 n.1 (9th Cir. 1985).

Moreover, even if the Court were to disregard the stipulation and presume that Adrian Valencia-Pacheco were to testify at trial consistent with his prior statement, the

Court finds that Patron has failed to demonstrate that the statement was material—i.e., "there is a reasonable likelihood that the testimony could have affected the judgment of the trier of fact." *Dring*, 930 F.2d at 694–95 (quotation omitted). As described above, Adrian Valencia-Pacheco's statement is internally inconsistent. At one point, an agent stated that Patron was one of three other people at the Motel Luxor and Adrian Valencia-Pacheco did not appear to dispute this assertion, instead only stating that he did not know the third person the agent named. (*See* Part 1 of Trans. at 85–86.) At another point, Adrian stated that he did not know if there were any more people involved apart from A.L.L. and the masked person who drove him to the Motel Luxor. (*See* Part 2 of Trans. at 47–48, 51, 53.) Even viewing the inconsistencies in a favorable light to Patron, it fails to exculpate Patron given Adrian's statement that one of the participants was wearing a mask. The Court of Appeals has held that "speculation" is insufficient "[t]o demonstrate prejudice" in this context. *Gastelum-Almeida*, 298 F.3d at 1174 ("[Defendant Gastelum–Almeida] speculates that because certain witnesses did not mention use of a gun, they would then testify that Gastelum–Almeida did not use a gun to take over a van, rob the driver and the smuggler in the passenger seat, extort money from the aliens, and keep them from leaving a residence until their families paid up. We reject the argument."). The Court finds that Patron has failed to demonstrate prejudice. For this reason alone, the Motion to Dismiss must be denied.

In the moving papers, Patron adds a cursory reference to *Brady v. Maryland*, 373 U.S. 83 (1963). The Government asserts that it has disclosed to Patron all material information in its possession, including the reports and transcripts related to Adrian Valencia-Pacheco. Patron has not disputed this assertion. Instead, Patron's *Brady* argument is based on the Government's deportation of Adrian Valencia-Pacheco prior to Patron being given the opportunity to question him, despite the deportation being eight months prior to Patron being charged and two and a half years prior to Patron's arrest. (*See* ECF No. 216-1 at 7.) The Court finds that the proper "test to evaluate whether the government's deportation of an alien-witness amounts to a constitutional

violation," *Leal-Del Carmen*, 697 F.3d at 969, is the two-part test addressed in *Leal-Del Carmen*, and applied to this case above.

In the Motion to Dismiss, Patron does not request an evidentiary hearing. (*See generally* ECF No. 218.) At oral argument on the motion, Patron requested an evidentiary hearing to question the Government's case agent and other law enforcement witnesses to learn when they discovered evidence of Patron's involvement, when they believed they were going to charge Patron, and when the Grand Jury began investigating Patron. Patron's theory is that the Government may have intended to charge Patron and had the evidence to do so in January 2022 when Adrian Valencia-Pacheco was deported, but intentionally waited eight additional months to charge Patron in a bad-faith attempt to avoid the rule discussed in *Leal-Del Carmen* and similar cases.

To the extent the request for an evidentiary hearing was not waived by failure to include it in the moving papers, the Court declines to hold a hearing. An evidentiary hearing "ordinarily is required if the moving papers are sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that contested issues of fact going to the [disputed legal issue]." *United States v. Walczak*, 783 F.2d 852, 857 (9th Cir. 1986) (citation omitted). However, if "the record contains no controverted fact sufficient to require an evidentiary hearing," then the Court may properly deny a request for an evidentiary hearing. *Id*. There is no dispute that the Government has disclosed all documentary evidence and discoverable investigatory reports to Patron. The *Brady* rule "does not encompass an obligation on the prosecutor's part to reveal his or her strategies, legal theories, or impressions of the evidence." *Morris v. Ylst*, 447 F.3d 735, 742 (9th Cir. 2006); *see United States v. Bagley*, 473 U.S. 667, 675 (1985) ("[T]he prosecutor is not required to deliver his entire file to defense counsel, but only to disclose evidence favorable to the accused that, if suppressed, would deprive the defendant of a fair trial."). In order to deviate from this general rule that a prosecutor's opinions and mental impressions of the case are not discoverable and in order to warrant an evidentiary hearing, Patron must point to something "definite, specific, detailed, and

nonconjectural to enable the court to conclude that contested issues of fact" exist as to whether the Government acted in bad faith in deporting Adrian Valencia-Pacheco. *Walczak*, 783 F.2d at 857.

During oral argument, Patron pointed to the fact that agents questioned Adrian Valencia-Pacheco about Patron as evidence that the investigation was focused on Patron. During the 181-page transcript of Adrian's interview, Patron was discussed once when two photos of Patron were shown to Adrian, and then agents moved on to other topics. (*See* Part 1 of Trans. at 84–86, Ex. 1 to Government Resp. to Mot. To Dismiss, ECF No. 220.) During the same colloquy, agents asked Adrian about another individual who has not been charged. *Id*. at 86. This relatively brief mention of Patron is not "sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude" that there exists a contested issue of fact as to whether the Government acted in bad faith. *Walczak*, 783 F.2d at 857; *see also Gastelum-Almeida*, 298 F.3d at 1174 ("To establish that the government acted in bad faith, Gastelum–Almeida must show either that the government departed from normal deportation procedures, or that it deported the witnesses to gain an unfair tactical advantage at trial.") (quotation omitted). The Court concludes that the record contains no controverted fact sufficient to require an evidentiary hearing, and the oral request for an evidentiary hearing is denied.

**II. Motion to Suppress**

On October 28, 2024, Patron filed the pending Motion to Suppress Statements. (ECF No. 215.) Patron seeks to suppress his post-arrest statement made on June 14, 2024, at the FBI Field Office in San Diego. Patron contends that the statement must be suppressed based upon the following arguments: (1) the statement violates the "*McNabb-Mallory*" rule, as modified by 18 U.S.C. § 3501; (2) the statement violates *Miranda v. Arizona*, 384 U.S. 436 (1966); "there is no evidence that Mr. Patron knowingly waived his right to counsel before agents interrogated him" (ECF No. 215-1 at 12); and Patron's statement was involuntary.

On November 8, 2024, the Government filed a Response to the Motion to Suppress. (ECF No. 219.) In its Response and at oral argument, the Government stated that it does not intend to use Patron's statement in its case-in-chief. As agreed by Patron at oral argument, this position by the Government renders all arguments in the Motion to Suppress moot, with the exception of the argument that Patron's statement was involuntary. *Cf. United States v. Gomez*, 725 F.3d 1121, 1126 (9th Cir. 2013) ("[A] defendant's voluntary statements—even if obtained in violation of *Miranda*—are admissible as impeachment evidence."). Accordingly, the Court focuses solely on the dispute between the parties as to whether Patron's post-arrest statement was voluntary.

The Government bears the burden of proving voluntariness by a preponderance of the evidence. *See Lego v. Twomey*, 404 U.S. 477, 489 (1972). In determining the voluntariness of a custodial statement, courts "examine[] 'whether a defendant's will was overborne' by the circumstances surrounding the giving of" the statement considering "the totality of all the surrounding circumstances—both the characteristics of the accused and the details of the interrogation." *Dickerson v. United States*, 530 U.S. 428, 434 (2000) (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973)). "The [voluntariness] determination 'depend[s] upon a weighing of the circumstances of pressure against the power of resistance of the person confessing.'" *Id*. (quoting *Stein v. New York*, 346 U.S. 156, 185 (1953)); *see also Balbuena v. Sullivan*, 980 F.3d 619, 629 (9th Cir. 2020). "A confession is involuntary if it is not the product of a rational intellect and a free will. A necessary predicate to finding a confession involuntary is that it was produced through coercive police activity." *Brown v. Horell*, 644 F.3d 969, 979 (9th Cir. 2011) (quotations omitted). "The factors to be considered include the degree of police coercion; the length, location and continuity of the interrogation; and the defendant's maturity, education, physical condition, mental health, and age." *Id*. Other factors include "the lack of any advice to the accused of his constitutional rights, the length of detention, the repeated and prolonged nature of the questioning, and the

use of physical punishment such as the deprivation of food or sleep." *United States v. Haswood*, 350 F.3d 1024, 1027 (9th Cir. 2003).

Patron's counsel contends that Patron's statement was involuntary, contending as follows:

> He was young, inexperienced, had little formal education and no education in the United States, no prior experience with the criminal system, and was instructed to read and sign a statement indicating he waived his rights. Before advising him of his rights, agents had already begun questioning him about the facts of their investigation. By the time he was asked to read and sign a *Miranda* waiver form, he had already provided agents with case-specific information. Thus, it was not voluntary for him to stop talking once warnings were provided, because he had already been subjected to an interrogation without counsel present.

(ECF No. 215-1 at 11.)

The Government has filed a full transcript of Patron's post-arrest interview and a video of the interview. At oral argument, Patron withdrew his prior request for an evidentiary hearing on the Motion to Suppress and agreed to submit the Motion to Suppress on the evidence on the record. The Court has reviewed this evidence.

The Court considers the characteristics of the Defendant. Patron was 23 years old. The Court accepts Patron's representation that he had little formal education and no prior experience in the criminal justice system. However, there is no indication from the interview that Patron misunderstood the environment or questioning. It is apparent from the transcript and video that Patron listened closely and responded to questions appropriately. When the agents confronted Patron with facts against him, Patron invoked his right to counsel, which demonstrates an understanding of this right.

The Court considers the details of the interrogation. Patron arrived at the San Diego FBI Field Office at approximately 12:45 pm on June 14, 2024. Patron had flown that morning on a flight from Mexico City to Los Angeles and then was driven to San Diego. Patron slept on the flight and in the car. Patron was permitted to use the restroom upon arrival at the San Diego Field Office. Patron was provided food and drink from a

fast-food restaurant, which Patron ate during the interview. The interview began at 1:11 pm and ended when Patron invoked his right to counsel at approximately 2:10 pm. Patron appeared awake and alert during the interview. The entire interview was conducted in a conversational tone, with no raised voices by any participant.

After introducing themselves and confirming that it was alright to speak while Patron ate, the agents began the interview by asking biographical questions about Patron. (Gov. Resp. to Mot. to Suppress, Ex. 1 at 1–8.) A Spanish-speaking agent translated for Patron. The agents then told Patron, "We're going to present what we know, okay? Before we ask you questions." *Id*. at 14. Patron responded, "Perfect." *Id*. The agents provided Patron with facts about the case and showed Patron a video from one of the hotels involved in the case. *Id*. at 15–18. The agents then asked, "Do you feel comfortable talking with us about [a named individual] and how he had a part in this? Do you feel okay talking to us about [the named individual] … and what happened?" *Id*. at 18. Patron responded, "Yes." *Id*. The agents then advised Patron of his *Miranda* rights in Spanish. *Id*. at 18–20. Patron confirmed he understood his rights and read aloud from a pre-printed Advice of Rights and Waiver form and then signed the form. *Id*. at 20. The agents then began to discuss the previously mentioned individuals and the case, and Patron stated that he had read "all the evidence" that had been in the paperwork filed in his extradition case in Mexico. *Id*. at 22. The agents discussed the case with Patron in a conversational manner and tone. *Id*. at 22–79. Near the end of the interview, one of the agents then told Patron, "I have a video of you committing the crime, okay? I've shown you the video." *Id*. at 79. The agent told Patron that, "there is evidence … that backs up his story…. There is nothing to back up what you have told us." *Id*. at 81. At that point, Patron stated: "I mean, so, I'm going to wait to have my attorney and we talk well, alright?" *Id*. The agents ceased questioning immediately and gave Patron an opportunity to finish his meal. *Id*. at 82.

Patron was relatively young and inexperienced in the criminal justice system, with no experience in the United States. However, Patron exhibited alertness,

intelligence, and understanding during the interview. Patron was treated with courtesy and was not subjected to physical punishment or deprived of sleep, food, drink, or a restroom. The interview occurred in a conversational tone and lasted an hour. Patron ultimately was confronted with evidence of his guilt, but Patron then quickly invoked his right to counsel and the interview was immediately terminated. On balance, after considering the totality of the circumstances including Patron's circumstances and the details of the interrogation, the Court does not find that Patron's "will was overborne by the circumstances surrounding the giving of the statement…." *Dickerson*, 530 U.S. at 434. The Court finds that the Government has proven by a preponderance of the evidence that Patron's statements during this interview were made voluntarily. The Motion to Suppress Statements is denied.

## III. Conclusion

IT IS HEREBY ORDERED that the Motion to Dismiss and the Motion to Suppress Statements are denied. (ECF Nos. 215 & 216.)

IT IS FURTHER ORDERED that the parties shall file all proposed jury instructions—except for any theory of the defense instruction(s)—no later than 10 days prior to the start of trial.

Dated: November 25, 2024

Hon. William Q. Hayes
United States District Court