ANDREW R. HADEN
Acting United States Attorney
MARIO J. PEIA
ALEXANDRA F. FOSTER
California Bar No. 307503
Washington, D.C. Bar No. 470096
Assistant U.S. Attorney
Office of the U.S. Attorney
880 Front Street, Room 6293
San Diego, CA 92101
Tel.: (619) 546-9706/6735
Email: Mario.Peia/Alexandra.Foster@usdoj.gov

Attorneys for Plaintiff
United States of America

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>BRIAN ALEXIS PATRON LOPEZ,<br><br>Defendant. | Case No.: 21cr1683-WQH<br><br>**United States' Briefing Regarding the Juror Issue Discussed at the March 20, 2025 Hearing**<br><br>Honorable William Q. Hayes |

On March 20, 2025, the Court raised an issue related to a text message a juror received on March 18, 2025. For the reasons detailed herein, the United States recommends the Court make a finding that the contact was innocuous, consistent with the rationale below, take no further action, and proceed to sentencing on July 7, 2025.

//
//
//
//
//
//

# I.

## FACTUAL BACKGROUND

On March 19, 2025, the jury returned a verdict and was polled without issue. The jury was then discharged. As relayed by the Court, the Bailiff walked into the jury room to collect the trial exhibits after the jury was discharged. There, the Bailiff encountered Juror 1, who held up her phone and told the Bailiff she had received a text message the day before from a phone number out of Denver. The text was sent from "Vanessa." The number and name were unknown to Juror 1. Juror 1 said she thought the name was similar to a name mentioned in the case and asked the Bailiff what to do. The Bailiff gave no advice and did not investigate further. The Bailiff did not read the text(s), and did not ask Juror 1 any questions.

# II.

## ARGUMENT

a. *Legal Standards*

The Supreme Court has recognized that "it is virtually impossible to shield jurors from every contact or influence that might theoretically affect their vote." *Smith v. Phillips*, 455 U.S. 209, 217 (1982). The Ninth Circuit set out the procedure for evaluating jury tampering claims in *Godoy v. Spearman*, 861 F.3d 956 (9th Cir. 2017) (en banc). The defendant bears the initial burden and "must present evidence of a contact sufficiently improper as to raise a credible risk of affecting the outcome of the case." *Id.* at 967; *see also Clark v. Chappell*, 936 F.3d 944, 970–71 (9th Cir. 2019) (splitting the inquiry into two: 1) a showing the contact was "*sufficiently improper*," and 2) a determination whether the sufficiently improper contact gives rise to a "*credible risk* of affecting the outcome of the case") (emphasis in original) (quoting *Godoy*, 861 F.3d at 967). Although it is a "low threshold," the contact "must 'raise a credible risk of influencing the verdict' before it triggers the presumption of prejudice." *Id.* (quoting *Tarango v. McDaniel*, 837 F.3d 936, 947 (9th Cir. 2016)). "Threadbare or speculative allegations" are insufficient. *Tarango*, 837 F.3d at 947. "[I]f an unauthorized communication with a juror is *de minimis*, the defendant

must show that the communication could have influenced the verdict before the burden of proof shifts to the prosecution." *Caliendo v. Warden of California Men's Colony*, 365 F.3d 691, 696 (9th Cir. 2004).[1]

In determining whether the defendant's initial burden is met, the court "considers the full context of the contact to determine whether a credible risk of prejudice exists." *Godoy*, 861 F.3d at 967. Relevant considerations include whether the unauthorized communication concerns the case, the length and nature of the contact, evidence of actual impact, and the possibility of eliminating prejudice through a limiting instruction. *Caliendo,* 365 F.3d at 697–98.

   b. *Application*

The text message that Juror 1 received intersects with this case in two unrelated and negligible ways. First, the name "Vaness" was raised once, in passing. It appears in Government Exhibit 107, pg. 13. When defense counsel asked about "Vaness" on cross examination, A.L. answered that she was someone who imported controlled substances for him, presumably from Tijuana to San Diego. "Vaness" was not mentioned again at trial. Second, J.M. was arrested in a hotel in Pueblo, Colorado, a city over 100 miles from Denver with a different area code. Once again, the location of J.M.'s arrest was only mentioned in passing and played no role in either side's presentation of evidence or arguments in opening or closing. The "Vaness" from the text and A.L. had no connection to Denver, and nothing linked J.M. to "Vaness."

Most importantly, the Court used an anonymous jury. Only government and defense counsel knew the names of the jurors and at no point were their names mentioned in open court.  Furthermore, nobody had the jurors' phone numbers.

The extremely limited intersections of the text message to the case and the reality that no one with a vested interest in this case had Juror 1's phone number demonstrates that

---

[1] If the Court were to find Defendant's burden met at step one, the burden would shift to the United States "to disprove prejudice." *Godoy*, 861 F.3d at 959. However, for the reasons discussed herein, Defendant's step one burden is not met, and the Court need not move to step two.

Defendant's step one burden has not been met. There is no indication that the contact was improper, much less "sufficiently improper," nor does it "raise a credible risk of affecting the outcome of the case." *Godoy*, 861 F.3d at 967. First, there is no indication the text message concerns the case. Rather, one could more reasonably conclude that the text is a spam message, unrelated to the case. Second, the length of the contact was brief and, again, there is no indication that the nature of the contact involved the case. Third, there is no evidence of the text message having an actual impact. The jurors were polled without issue or hesitation. Finally, "Vanessa" and "Denver" have no connection to the case, but to the extent one considers Vaness for Vanessa and Pueblo, Colorado for Denver, Colorado, these people and places are both connected to different witnesses—not the Defendant—and it is entirely unclear why a witness' contact, in the setting of this case, would attempt to influence the jury. The fact that the witnesses' attorneys did not have the jurors' names— let alone their phone numbers—further supports that this was a spam message, wholly disconnected from the case. Furthermore, even if Juror 1 *thought* the message was somehow related to a trial witness, there is no logical reason why that would have influenced her vote one way or another. Finally, the consideration for a limiting instruction is moot given that the issue was raised to the Court after the jurors had been polled and discharged.

Altogether, all available evidence, particularly the juror's anonymity, indicates the contact was not "sufficiently improper." And, even if it were, there is no "credible risk" of the message affecting the outcome of the case. This appears to be an unfortunate spam message that hints at two loose and unrelated connections to inconsequential parts of the case. As such, the Court should find that Defendant has not and cannot meet his burden at step one of the *Godoy* test.

//

//

//

//

//

1

## III.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court make a finding consistent with this briefing and maintain the current dates for post-trial motions and sentencing.

Dated:      March 31, 2025                          ANDREW R. HADEN
                                                    Acting United States Attorney

                                                    *s/Mario J. Peia*
                                                    MARIO J. PEIA
                                                    ALEXANDRA F. FOSTER
                                                    Assistant United States Attorneys