MEGHAN BLANCO (238171)
LAW OFFICES OF MEGHAN BLANCO
    28202 Cabot Road, Suite 300
    Laguna Niguel, California 92677
    Telephone:    (949) 296-9869
    Facsimile:    (949) 606-8988
    E-mail:       mblanco@meghanblanco.com

Attorney for BRIAN ALEXIS PATRON LOPEZ

UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>BRIAN ALEXIS PATRON LOPEZ,<br><br>Defendant. | No. CR 21-CR-1683-WQH<br><br><u>OPPOSITION TO GOVERNMENT'S SUPPLEMENTAL FILING RE JUROR CONTACT</u> |

  Brian Alexis Patron Lopez, by and through his counsel of record, hereby files his opposition to the government's briefing regarding a juror contact during trial.

             Respectfully Submitted,

Dated: April 7, 2025

             __//s// Meghan Blanco_____
             MEGHAN BLANCO
             Attorney for
             BRIAN ALEXIS PATRON LOPEZ

1

MEMORANDUM OF POINTS AND AUTHORITY

I.  INTRODUCTION

The Government's brief can be distilled into four general arguments: i) the extraneous contact was unrelated to the trial; ii) the extraneous contact did not cause Juror 1 to change her vote; iii) the extraneous contact was de minimis; and iv) no one had motive to engage in jury tampering. Because the Government misstates the facts upon which its arguments are predicated, and relies upon inapposite law, its arguments should be rejected.

II.  ARGUMENT

a.  The Extraneous Contact Objectively Appears to be Trial Related

The Government's primary argument is that the extraneous contact, received by Juror 1, appears to be unrelated to the trial. To reach this conclusion, the Government avers that the name in the extraneous contact (Vanessa) is different than the name introduced at trial (Vaness). This monosyllabic difference, according to the Government, is not without distinction because Vanessa and Vaness are sufficiently dissimilar to be conflated. However, the factual underpinning of the Government's argument is erroneous: at trial, the individual, who worked for the DTO, was introduced as Vanessa, not Vaness. Thus, the name on the extraneous contact did, in fact, match the name mentioned at trial. Further, witnesses in the case were geographically connected to Colorado: the text message was sent from a Colorado

2

phone number, and C004 is associated with Colorado, as that is where he was arrested. Therefore, it was objectively reasonable for Juror 1 to perceive that the extraneous contact was related to the trial.

          b.  The Extraneous Contact Distracted the Jurors.

The Government's secondary argument is that, because the extraneous contact did not influence Juror 1's vote, it was not prejudicial. However, during a jury tampering inquiry, a court is not permitted to ask an affected jury if an extraneous contact effected the vote. In fact, the Ninth Circuit has repeatedly distinguished between testimony regarding an affected juror's mental processes in reaching a verdict--which is barred by Rule 606(b)--and testimony regarding the juror's more general fear and anxiety following a tampering incident, which is admissible for purposes of determining whether there is a "reasonable possibility that the extraneous contact affected the verdict." *United States v. Henley*, 238 F.3d 1111 (9th Cir.2001). Accordingly, rather than considering the influence that the extraneous contact had on the jurors' votes, the court should consider whether or not it interfered with their deliberations by distracting them. *United States v. Dutkel*, 192 F.3d 893, 897 (9th Cir. 1999).

    III.    Motive to Tamper Existed

The Government's quaternary argument is that, because the extraneous contact was brief, an evidentiary hearing to determine its impact would be superfluous. This

3

argument is circular and unavailing: without an evidentiary hearing, the extent of the prejudice cannot be determined. Regardless, the extraneous contact was not, as the Government blindly speculates, di minimis or innocuous. Because if it was, Juror 1 would not have responded to the text: people, obviously, do not respond to messages that they perceive to be spam. And, if she perceived the text to be spam, she would not have arrogated the jury's deliberative process by agitating it with a discussion of the text. Finally, if Juror 1 perceived the message to be spam, she would not have affirmatively brought it to the court's attention. But she did all of those things. Her actions, in so doing, not only reflect that she perceived the text to be trial-related, but additionally reflect that she tainted the entire panel.

Interrelated with its lack-of-motive argument, the Government asserts that "even if Juror 1 thought the message was somehow related to a trial witness, there is no logical reason why that would have influenced her vote." This argument disregards the subject matter of the trial. The trial involved graphic testimony about how the DTO brutally kidnapped, tortured, and murdered a teenager. It is eminently reasonable that a juror, who perceived that the DTO had contacted her, would experience fearfulness and distractedness. In fact, the Government, in cases involving cartels and DTOs, has

previously argued that DTO's/cartel's ability to interfere with the judicial process can cause distraction.[1]

### IV. The Extraneous Contact was not Di Minimis

The Government's quaternary argument is that, because the extent of the extraneous contact was brief, an evidentiary hearing to determine its impact would be superfluous. This argument is circular and unavailing: without an evidentiary hearing, the extent of the prejudice cannot be determined. Regardless, the extraneous contact was not, in fact, di minimis. While the Government, apparently, did not investigate the jury tampering revelation, the defense did. And the investigation revealed that Juror 1 arrogated the jury's deliberative process by agitating it with a discussion of the extraneous contact.

The Ninth Circuit has found jury tampering based on contacts far more innocuous than this. In *United States v. Simtob*, 485 F.3d 1058 (9th Cir. 2007), for example, jury tampering was found where the defendant had merely "eye-balled" a juror during the trial. The court held: "Despite the lack of evidence that Simtob had any direct contact with the jury, the presumption of prejudice applies here because even indirect coercive contacts that could affect the peace of mind of the jurors could

---

[1] "These limited measures are necessary to protect the integrity of the trial and the jury's impartiality by preventing harassment, intimidation, or other interference with the jurors—and just, as importantly, by mitigating any fear in the minds of the jurors of any such harassment, intimidation, or other interference" (U.S. v. Loera, 09-CR-466, Government's Request for Sequestered Jury, page 1.)

give rise to the Remmer presumption. That at least one juror's peace of mind was affected is obvious from the district court's assertion that the juror claimed he or she felt threatened by Simtob. The Government, therefore, bears the burden of rebutting the presumption of prejudice". *Simtob*, 485 F.3d at 1064.

Jury tampering requires neither that a juror know which party is responsible for the tampering nor that the threatening behavior explicitly reference the outcome of the case. In *Dutkel*, the Ninth Circuit held that a co-defendant's bribery and coercion of a juror as to the co-defendant's case alone was prima facie jury tampering with respect to *Dutkel* as well, even though during the coercion of the juror, the co-defendant's henchmen specifically stated, "We don't care about *Dutkel*." *Id*. at 897. The coercion in that case was explicitly divorced from the outcome of *Dutkel*'s trial, and yet the Ninth Circuit found jury tampering had occurred because the "intervention interfered with the jury's deliberations by distracting one or more of the jurors, or by introducing some other extraneous factor into the deliberative process." *Id*. Dutkel was not an outlier case. In *United States v. Angulo*, 4 F.3d 843 (9th Cir. 1993), the contact, which the Ninth Circuit declared to be prejudicial, was nothing more than an anonymous phone call to a juror in which the caller said, "I know where you live." 4 F.3d at 846. The caller never identified himself and never mentioned the matter pending before the jury on which the juror served. Even though there were no facts tying the call to the case, and the trial court dismissed the juror who received the phone call, the Ninth

6

Circuit concluded that the contact gave rise to the Remmer presumption because, as is the case here, the other jurors may have learned of the contact.

Courts employ an "objective test ... to assess whether extraneous information would likely affect a typical juror." *United States v. Blemeyer*, 62 F.3d 1013, 1037 (8th Cir. 1995). The relevant considerations include: (1) whether the extrinsic evidence was received by the jury and the manner in which it was received; (2) whether it was available to the jury for a lengthy period of time; (3) whether it was discussed and considered extensively by the jury; (4) whether it was introduced before a jury verdict was reached and, if so, at what point during the deliberations; and (5) whether it was reasonably likely to affect the verdict, considering the strength of the government's case and whether the government's case outweighed any possible prejudice caused by the extrinsic evidence. *Id*. (*citing Bayramoglu v. Estelle*, 806 F.2d 880, 887 (9th Cir.1986), and *Osborne v. United States*, 351 F.2d 111, 118 (8th Cir.1965)). Here, every consideration militates in favor of a presumption of prejudice: Juror 1 received the evidence prior to deliberations; it was possessed throughout the entirety of the deliberations; she shared it with the entire panel; it was discussed by the entire panel; and the Government's case was extremely weak.

V.     CONCLUSION

This is not a run-of-the-mill ex parte contact case—it is a jury tampering case. Jury tampering is a much more serious intrusion into a jury's processes and poses an

inherently greater risk to the integrity of a verdict. While we presume that jurors disregard the advice of most ex parte contacts, we can indulge no such presumption where jury tampering is involved. Here, a juror, on the verge of deliberating a DTO kidnapping, torture, and murder case, pondered whether she was contacted by someone associated with the DTO. Rather than comply with the court's instruction, to promptly report extraneous contacts, she tainted the entire panel with the information. The Supreme Court has unequivocally and repeatedly held that a district court must, upon learning of such an allegation, conduct an evidentiary hearing to determine the extent of prejudice. Mr. Patron Lopez respectfully requests that the court do so.

Respectfully Submitted,

Dated: April 7, 2025

　　　　　　　　　　　　　　　　__//s// Meghan Blanco_____
　　　　　　　　　　　　　　　　MEGHAN BLANCO
　　　　　　　　　　　　　　　　Attorney for
　　　　　　　　　　　　　　　　BRIAN ALEXIS PATRON LOPEZ

## DECLARATION OF COUNSEL

1. I am counsel for Mr. Patron.
2. Following the March 20, 2025, status hearing, I asked Investigator Dennison to try to interview Juror Number One. Despite his best efforts, he has been unable to interview Juror Number One.
3. I also asked Investigator Dennison to try to interview other jurors. On March 22, 2025, he interviewed Juror Number Three.
4. Juror Number Three told Investigator Dennison that he and the rest of the jurors had seen and discussed the text at issue. He knew the name of the purported sender ("Vanessa"), and that the text was from a number in Denver. He also knew the contents of the message and juror number one's response to the message.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Signed this 31 day of March, 2025, in San Clemente, CA.

/s/ Meghan Blanco