```
ADAM GORDON
United States Attorney
ALEXANDRA F. FOSTER/MARIO J. PEIA
Assistant U.S. Attorneys
D.C. Bar No. 470096/CA Bar No. 307503
United States Attorney's Office
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 546-6735/9706
Email: alexandra.foster@usdoj.gov/mario.peia@usdoj.gov
```

Attorneys for the United States

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> BRIAN ALEXIS PATRON LOPEZ, <br><br> Defendant. | Case No.: 21CR1683-WQH <br><br> **United States' List of Proposed Questions and Report On Securing Jurors' Attendance** |

On April 21, 2025, this Court ordered the parties to "file a list of proposed questions for the Court to ask the jurors, accompanied by any legal authority supporting the questions" in anticipation of hearings to be held on May 16, 2025 and May 19, 2025. ECF 339 at 12. The Government hereby files its list of questions and underlying legal authority, along with a report on securing the jurors' attendance, which it has filed under seal.

**Proposed Questions**

Because the jurors are differently situated, the Government has divided the questions by juror number.

<u>Juror #1</u>

1. Did you receive a text message on your phone that you discussed with the Court's Bailiff after the jury returned a verdict?

    a.    "… [T]he prosecution could seek further evidence about the content of the communications themselves, to show, for example, that rather than texting about the case, the juror was simply asking a friend out to dinner. These examples are not exhaustive, only illustrative." *Godoy v. Spearman*, 861 F.3d 956, 969 (9th Cir. 2017)

2.    Do you still have the text message on your phone? If yes, could you show it to the Court?

3.    If you cannot show the Court the text message, what do you remember about what it said?

4.    Do you remember when you read it? (Before/after parties closed? Before/after jurors started to deliberate?)

5.    Did you respond to the text message? If yes, how did you respond to the text message? Why did you respond in that manner?

6.    Did you share the text message, its content, or the fact that you received it with your fellow jurors? All of them? If yes, did you show them the message, or tell them about it? When did you share this information with fellow jurors?

7.    To your knowledge, did a defense investigator go to your office after you were discharged as a juror? If yes, what happened?

8.    To your knowledge, did the FBI attempt to contact you prior to April 30, 2025 (when they contacted you to give you the Court's letter and serve a subpoena)?

9.    To your knowledge, did the FBI physically go to your office prior to April 30, 2025 (when they contacted you to give you the Court's letter and serve a subpoena)?

<u>Jurors #2 through 12</u>

1.    During your service as a juror in this courtroom, did Juror #1 mention a text message that she received?

2.    When did you learn of the message (Before/after closing? Before/after started to deliberate?)

3.    Are you aware of what the text message said? If so, what did it say?

<u>Juror #3</u>

1.   Did a defense investigator attempt to contact you after you were discharged as a juror? If yes, did you speak to him? What did you tell him?

<u>All Jurors</u>

1.   Did you perceive the text message as connected to this case? Why or why not?

    a.   "On remand, the district court should allow the parties to introduce evidence regarding the jurors' perceptions of the agents' conduct and any discussions among the jurors concerning the possibility of IRS retaliation if they voted to acquit." *United States v. Rutherford,* 371 F.3d 634, 645 (9th Cir. 2004). "Although the line that courts have drawn between the forms of juror testimony that are admissible and even inadmissible to show juror bias is imprecise—and although some may consider it artificial—we have made it clear that a court may not, under Rule 606(b), consider testimony regarding the affected juror's mental processes in reaching the verdict." *Id*. at 644 (internal quotations omitted).

    b.   "Similarly, in a prior case, the Ninth Circuit Court of Appeals held that it was permissible to ask a juror who had allegedly been tampered with 'about his state of mind in general following the bribery attempt,' but 'not [to] ask [the juror] whether, for example, he relied on the evidence introduced at trial in reaching his verdict.'" *United States v. Honken*, 381 F. Supp. 2d 936, 1043 (N.D. Iowa 2005). (quoting *United States v. Henley*, 238 F.3d 1111, 1118 (9th Cir. 2001)).

2.   Due to the text message, did you fear retaliation against you from any individual if you voted to acquit Defendant? Due to the text message, did you fear retaliation against you from any individual if you voted to convict Defendant?

    a.   "In this regard, a juror's testimony concerning his fear that individuals would retaliate against him if he voted to acquit (or convict) would be admissible." *United States v. Rutherford*, 371 F.3d 634, 644 (9th Cir. 2004).

3.   Did the text message negatively impact your ability to remain fair and impartial during deliberations?

    a.   "Further, evidence regarding any influence that such improper conduct or contacts had on the jurors' abilities to fairly and impartially receive the

evidence, listen to the testimony presented, and the judge's instructions is also admissible." *United States v. Rutherford*, 371 F.3d 634, 644 (9th Cir. 2004).

4. [If the juror(s) knew about the text message before the court's instructions:] Did the text message negatively impact your ability to listen to and follow the Court's instructions?

    a. "Consistent with the principles announced in *Rutherford*, the district court should admit Juror No. 2's statements about how the police tail impacted him, although not how it impacted his deliberations and verdict. Therefore, Juror No. 2's statement that he found the police tail 'unnerving' is admissible, as are his statements that he 'concluded Metro somehow knew who [he] was.' By contrast, Juror No. 2's statements that he 'relinquished his vote under duress,' and 'still [has] doubt as an X-Juror' are not admissible." *Tarango v. McDaniel*, 837 F.3d 936, 951 (9th Cir. 2016).

**Report on Securing the Jurors' Attendance**

The Government has attached an FBI report to this filing, where the Agent details service of the subpoenas and the Court's letter on the jurors, and the date that each juror is slated to appear.

DATED: <u>May 9, 2025</u>

Respectfully submitted,
ADAM GORDON
United States Attorney
*s/ Mario Peia/Alexandra F. Foster*
MARIO PEIA/ALEXANDRA F. FOSTER
Assistant United States Attorneys

4