MEGHAN BLANCO (238171)
LAW OFFICES OF MEGHAN BLANCO
    28202 Cabot Road, Suite 300
    Laguna Niguel, California 92677
    Telephone:    (949) 296-9869
    Facsimile:    (949) 606-8988
    E-mail:       mblanco@meghanblanco.com

Attorney for BRIAN ALEXIS PATRON LOPEZ

UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 21-CR-1683-WQH |
| Plaintiff, | QUESTIONS FOR JURORS |
| v. | |
| BRIAN ALEXIS PATRON LOPEZ, | |
| Defendant. | |

Brian Alexis Patron Lopez, by and through his counsel of record, hereby files his proposed questions for the Court to inquire of jurors.

Respectfully Submitted,

Dated: May 9, 2025

   //s// Meghan Blanco
MEGHAN BLANCO
Attorney for
BRIAN ALEXIS PATRON LOPEZ

1

# MEMORANDUM OF POINTS AND AUTHORITY

I.     INTRODUCTION

The Court has ordered an evidentiary hearing to determine whether an extraneous contact adversely affected the jurors. At the evidentiary hearing, the jurors should be queried about whether the contact impaired their ability to act impartially, caused them to experience anxiety, or distracted them. *See United States v. Dutkel*, 192 F.3d 893, 897 (9th Cir. 1999); *United States v. Blemeyer*, 62 F.3d 1013, 1037 (8th Cir. 1995); *United States v. Rutherford* 371 F.3d 634 (9th Cir. 2004). Accordingly, Mr. Patron Lopez respectfully requests that the Court propound the following questions to the jurors.

II.     Questions to Juror 1:

1. When was the text message, purportedly from Vanessa, received?
2. What, specifically, did the message state?
3. Upon receipt of the message, what did you do?
4. Did you conduct an internet search for the phone number?
5. Did you respond to the message?
6. Who did you tell about the communique?
7. Did you show the message to your family or friends, or discuss it with them?

8. Did you solicit the thoughts and impressions, of family or friends, of the message's meaning?

9. Did you share the message with the other jurors?

10. Did you solicit their thoughts and impressions of the message?

11. Why did you bring the message, after deliberations, to the bailiff's attention?

12. Did you consider, at any point, that the message may have originated with someone associated with the case?

13. Did you consider that sender may have been connected to the DTO?

14. Did you consider that the sender may have been associated with the CWs?

15. Did you consider that the DTO, CWs, or CW associates were in possession of your personal information?

16. Did you consider the possibility that, if the DTO, CWs or CW associates had your personal information, your safety might be at issue?

17. From the time the message was received, until it was reported to the bailiff, how many times did you think about it?

18. From the time the message was received, until it was reported to the bailiff, how much time did you spend thinking about it?

19. From the time the message was received, until it was reported to the bailiff, did you think about it at all while you were deliberating?

20. Did the possibility, that the message was sent by a DTO or CW associate, cause you to feel anxiety?

21. Did the possibility, that the message was sent by a DTO or CW associate, cause you to feel fearful?

22. Did the possibility, that the message was sent by a DTO or CW associate, distract you, at all, during the trial or deliberative process?

23. Did the message make you want to quickly conclude your jury service?

24. Describe how the message made you feel throughout deliberations.

III. <u>Questions for Jurors 2-12</u>

1. Did juror number 1 tell you about a text message that she received? Describe what occurred.

2. Did juror number 1 show you the message? Describe what occurred.

3. Do you know if other jurors were shown or told about the message?

4. Was there a discussion about the message among other jurors?

5. How many jurors spoke, outside of the jury room, about the message?

6. What, specifically, was said outside the jury room about the message?

7. Was there a discussion about the message in the jury room?

4

8. How many people spoke, in the jury room, about the message?

9. What, specifically, was said in the jury room about the message?

10. Did any juror state, jokingly or not, that the message may have originated with the DTO or CWs?

11. Did any juror state, jokingly or not, that the DTO or CWs may have juror number 1's personal information?

12. Did anybody look up information on the internet about the possible origin of the message?

13. Did anybody look up information on the internet about the DTO or CWs?

14. Did you consider the possibility that the message may have been connected to a DTO?

15. Did you consider the possibility the message may have been connected to the CWs?

16. Did you consider the possibility that the DTO or CW associates were in possession of your personal information?

17. Did you consider the possibility that, if the DTO or CWs had your personal information, your safety would be at issue?

18. How many times did you think about the message?

19. From the time the message was received, until it was reported to the bailiff, how much time did you spend thinking about it?

20. From the time the message was received, until it was reported to the bailiff, did you think about it while you were deliberating?

21. Did you discuss the message with anyone besides your fellow jurors? Please describe.

22. Did the fact that another juror received the message cause you to feel fear or anxiety?

23. Did discussion of the message cause you to feel anxiety?

24. Did discussion of the message cause you to feel fear?

25. Did you think about the text message, at all, during deliberations?

26. Did the message distract you, at all, during deliberations?

27. Did the message, or discussion of it, cause you to want to conclude your jury service early?

Respectfully Submitted,

Dated: May 9, 2025

                                      ___*//s// Meghan Blanco*_____
                                      MEGHAN BLANCO
                                      Attorney for
                                      BRIAN ALEXIS PATRON LOPEZ